**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 11 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

JOHN FINN,

     Plaintiff - Appellee,

v.

STATE OF NEW MEXICO, STATE
PERSONNEL OFFICE; NEW MEXICO
STATE HIGHWAY AND
TRANSPORTATION DEPARTMENT,

     Defendants,

and

PETE K. RAHN, Secretary,

     Defendant - Appellant.

No. 00-2276

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 99-982-SC/WWD)

_____

Paula I. Forney, Albuquerque, New Mexico (Cheryl O'Connor, Santa Fe, New Mexico,
with her on the briefs), for Defendant-Appellant.

Herbert M. Silverberg, Albuquerque, New Mexico, for Plaintiff-Appellee.

_____

Before **BRISCOE** and **PORFILIO,** Circuit Judges, and **MARTEN**, District Judge.[*]

_____

**MARTEN**, District Judge.

_____

Defendant-Appellant, Secretary of the New Mexico State Highway and Transportation Department, appeals from the district court's order denying: 1) his request for summary judgment on Plaintiff-Appellee's claim of wrongful termination in violation of his First Amendment rights; and 2) his claim of qualified immunity. Our jurisdiction arises under 28 U.S.C. § 1291, and we AFFIRM.

## Background

Plaintiff was a classified employee of the New Mexico State Highway and Transportation Department ("the Department") from 1974, when he began working for the Department. See Aplt.App. at 172. In January 1995, a new state administration replaced the Department's upper management, appointing Defendant-Appellant Rahn ("Rahn") Secretary of the Department and Benny Roybal ("Roybal") Deputy Secretary. Id. at 173.

In early 1995, Rahn announced his intent to reorganize the Department workforce. Id. By February 1995, plaintiff knew he would be demoted and transferred to another division within the Department. Id. Generally, the reorganization plan promoted three

[*] The Honorable J. Thomas Marten, United States District Judge for the District of Kansas, sitting by designation.

-2-

Department employees and demoted three others, including plaintiff. Id. at 50-55.

Plaintiff asserts that the reorganization was illegal as the Department did not obtain the approval of the New Mexico State Personnel Office.

On April 14, 1995, Roybal met with plaintiff and told him that he (plaintiff) would be demoted and transferred as part of the reorganization. Plaintiff refused to discuss the reorganization with Roybal because Roybal was not plaintiff's immediate supervisor and had not followed the appropriate chain of command. Id. at 173-74. On April 18, 1995, plaintiff sent an Intra-Department Correspondence ("IDC") to Roybal with copies to Rahn and plaintiff's immediate supervisor, Fred Cooney. In the IDC, plaintiff accused Roybal of abusing his power and attempting to "crucify" plaintiff. Id. at 174. Neither Rahn nor Roybal took any action in response to the April 18 IDC. Id.

Shortly thereafter, plaintiff took medical leave to undergo hip replacement surgery and did not return to work until June 1995. Id. at 52. Upon his return, plaintiff learned that Secretary Rahn and the Department had demoted him from an Administrator V to an Administrator IV and transferred him to another division. Id. at 175. On July 24, 1995, plaintiff sent a memorandum to the Department's Deputy General Counsel, Richard Ferrary. Id. The memorandum was not presented to the trial court, but generally requested Ferrary's assistance in plaintiff's attempt to contest the reorganization. Id.

On August 17, 1995, plaintiff sent another IDC to Rahn and Roybal, id. at 57, and sent copies to more than thirty-five other individuals and agencies. Id. at 62. Plaintiff

criticized the reorganization and Roybal's "personal agenda of hurting people you don't like (and/or are handicapped) and promoting those that play up to you." Id. at 58. Plaintiff suggested that the reorganization manifested Rahn's discrimination, favoritism and other abuses, and that the Department's use of the phrase "Equal Opportunity Employer" was a "sick joke." Id. at 59. He further alleged that Roybal was unqualified for his current position because Roybal was a non-engineer in a position of engineering oversight. Plaintiff also attempted to discredit Roybal's accounting abilities by citing certain incidents. Id. He voiced a wide range of concerns over the Department's implementation of the New Mexico State Personnel Act, including a mention of litigation involving another employee and the Department. Id. at 60. He suggested specific and detailed ways in which the reorganization could be better and more fairly instituted. Id. at 61. The remainder of plaintiff's August 17 memorandum displayed a vitriolic tone and reflected his great displeasure at the alleged inequities of the Department's reorganization, including statements that he believed Rahn and Roybal were abusing plaintiff's disabled status.

Plaintiff's August 21, 1995 IDC to the Department's Office of General Counsel ("Office") also reflected his emotional distress. Id. at 63. Once again, plaintiff sent copies to a large list of individuals and agencies. Id. at 65. The IDC's primary purpose was to request any legal assistance the Office might provide in plaintiff's continuing struggle with Rahn and Roybal. Plaintiff also stated he would be filing separate EEOC

claims against both Rahn and Roybal for discrimination against a disabled person. Id. at 63-64. The IDC concluded with a bitter diatribe on what he termed "a statement or two on values (Southwestern style)." Id. at 63-65.

In an August 23, 1995 IDC, plaintiff continued his vehement attacks on the reorganization and the leadership of Roybal and Rahn. Id. at 67. Plaintiff again sent copies of this correspondence to an increasingly large group of recipients. Id. at 69-70. While plaintiff's escalating level of frustration was clearly evident from the tone and language of the IDC, he did make several factual assertions. For example, plaintiff stated that Rahn and Roybal had failed to meet the State Personnel Offices' reorganization deadline. Plaintiff claimed this failure put the Department in a state of confusion and disarray, with neither managers nor employees knowing which tasks Rahn had assigned to which persons. Id. at 67-68. Plaintiff felt that Rahn and Roybal should have taken steps, such as providing a written clarification of the new system, its codes, and the new work assignments, to alleviate the confusion. In the August 23 IDC, plaintiff again expressed concern about Roybal's qualifications for an engineering and accounting position, and frustration at various management decisions that he claimed led to a significant loss of Department funds. Specifically, plaintiff stated Roybal had ignored the requests of qualified engineers for a specific type of storage building and that Roybal's decisions led to the loss of hundreds of thousands of dollars in traffic paint. Id. at 69. Finally, plaintiff once again accused Rahn and Roybal of conspiring to promote their

supporters and to demote and discriminate against the disabled.

On August 24, 1995, Rahn issued to plaintiff a notice of contemplated disciplinary action. See id. at 71. The notice cited plaintiff's August 17, August 21, and August 24 IDCs as the cause for the notice. Secretary Rahn states that "[t]he atmosphere you have created by widely disseminating such vitriolic documents detracts from my goal of maintaining a positive work environment." Id. The notice suggests that plaintiff should consider more "appropriate avenues to address grievances and complaints against the Department and its employees."

Plaintiff ignored the notice and sent Roybal another memorandum on August 28, 1995, again with wide dissemination. Id. at 74-75. In short, the memorandum accused Roybal of having an affair with a married employee and, once the employee's marriage ended, promoting the employee. In a number of conclusory statements, plaintiff suggests that Roybal is not fit to serve, has nothing to contribute, and should step down. Id.

On September 7, 1995, Ronald Grimes, acting Secretary for defendant Rahn, issued a final notice of disciplinary action indicating that the Department would proceed with plaintiff's termination. Id. at 76. The notice again cites plaintiff's August 17, August 21 and August 24 memoranda as the basis for termination. The notice states, "[a]lthough the substance of these documents deal with matters about which you have the prerogative to pursue as disputes with management (impact of a Department reorganization on your position, right to representation by Department counsel, alleged

-6-

improper behavior by management officials, job assignments, etc.), the tone and manner in which you chose to air these matters is irresponsible and unprofessional." Id.

On August 28, 1998, plaintiff filed a complaint for damages and equitable relief in the First Judicial District Court of the State of New Mexico, alleging that the defendants violated his right of free speech. Defendants removed the action to the United States District Court for the District of New Mexico on September 1, 1999. On January 31, 2000, defendants filed a motion seeking summary judgment on plaintiff's First Amendment claim arguing that plaintiff's speech was not a matter of public concern and that defendants' interest in regulating such speech outweighed plaintiff's interest in engaging in the speech. Defendant Rahn also asserted his entitlement to qualified immunity. The district court denied both the motion for summary judgment filed by all defendants and defendant Rahn's claim of qualified immunity. Id. at 172-207. Defendant Rahn appealed.

**Discussion**

The district court applied the balancing test set out in Pickering v. Board of Education, 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L.Ed.2d 811 (1968), in denying defendants summary judgment on plaintiff's First Amendment retaliation claim. We review de novo. Koch v. City of Hutchinson, 847 F.2d 1436, 1441 & n.14 (10th Cir.1988)(*en banc*). Additionally, we review the denial of qualified immunity de novo. Furnace v. Oklahoma Corp. Com'n, 51 F.3d 932, 935 (10th Cir. 1995).

We first address the district court's determination that plaintiff engaged in speech protected by the First Amendment. A government employer cannot "condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." Connick v. Myers, 461 U.S. 138, 142, 103 S. Ct. 1684 (1983). Thus, "a public employer cannot retaliate against an employee for exercising his constitutionally protected right of free speech." Dill v. City of Edmond, 155 F.3d 1193, 1201 (10th Cir. 1998).

We apply a four-part test in evaluating plaintiff's First Amendment retaliation claim. First, "we must determine whether the employee's speech involves a matter of public concern." Dill, 155 F.3d at 1201. If so, "we then balance the employee's interest in commenting upon matters of public concern 'against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" Id. (quoting Pickering, 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L.Ed.2d 811 (1968)). Third, if the balance "tips in favor of the employee, the employee then must show that the speech was a 'substantial factor or a motivating factor in the detrimental employment decision.'" Id. (quoting Gardetto v. Mason, 100 F.3d 803, 811 (10th Cir. 1996)). Fourth, if the plaintiff establishes that speech was such a factor, "the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech." Id.

Our review considers only the two initial inquiries.[1]  The threshold question in assessing the free speech claim of a discharged government employee is whether the employee has spoken "as a citizen upon matters of public concern" or merely "as an employee upon matters only of personal interest." Connick, 461 U.S. at 147, 103 S.Ct. at 1690.  Matters of public concern are those which can "be fairly considered as relating to any matter of political, social, or other concern to the community." Id. at 146, 103 S.Ct. at 1690. While speech pertaining to internal personnel disputes and working conditions ordinarily will not involve public concern, id. at 148, 103 S.Ct. at 1690-91, "[s]peech that seeks to expose improper operations of the government or questions the integrity of governmental officials clearly concerns vital public interests." Conaway v. Smith, 853 F.2d 789, 797 (10th Cir. 1988).  In making this determination, we consider the "content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48, 103 S.Ct. at 1690.

As to the first inquiry, Rahn concedes that limited portions of plaintiff's speech touch on matters of public concern.  In Rahn's own termination notice to plaintiff, he indicates that plaintiff's IDCs "deal with matters about which you have the prerogative to pursue as disputes with management (impact of Department reorganization on your position, right to representation by Department counsel, alleged improper behavior of

_____

[1] Rahn does not assert that the Department would have terminated plaintiff in the absence of his speech. Thus, the third and fourth factors have no bearing on the outcome of this appeal.

management officials, job assignments, etc.)." Aplt.App. at 76. Plaintiff's speech sought to expose the allegedly illegal nature of the Department's reorganization, the lack of integrity and qualifications of the Department's management, ineptitude of the Department's management, loss of Department funds due to management's poor decision-making, and the impact of Roybal's alleged affair with a subordinate on his decision to promote that subordinate. Portions of plaintiff's speech do touch on matters of public concern under the Connick standards.

Yet many portions of plaintiff's speech dealt with matters of purely personal interest to plaintiff. His concerns for maintaining his existing position, salary, and responsibility motivated his statements concerning the negative effects of the reorganization. Plaintiff's repeated requests that Rahn and Roybal reconsider his demotion were similarly motivated. In alleging that Rahn and Roybal discriminated against him because of his disability, plaintiff was simply furthering his attempts to contest the demotion and transfer. Additionally, many other portions of plaintiff's memoranda contained vitriol, which we construe as matters of personal interest. In short, we agree with the district court's conclusion that some portions of plaintiff's speech are of public concern and many portions are not.

Defendant argues, however, that the district court erred in "picking and choosing" portions of speech in performing the Pickering balancing test instead of considering the speech as a whole, as discussed in Gardetto. He cites Khuans v. School District 110, 123

F.3d 1010, 1016-17 (7th Cir. 1997), claiming that here, as in <u>Khuans</u>, there is a "tidbit" of speech on matters of public concern in a "bagful of [personal] complaints." In <u>Khuans</u>, the Seventh Circuit found only one item of speech on a matter of public concern in a huge litany of personal complaints, and held that the plaintiff's speech was "much closer to the 'private' than the 'public' end of the spectrum, and thus not protected." <u>Id.</u> at 1017. In the same opinion, however, the Seventh Circuit also stated that "[i]f the facts asserted in [the] complaint establish that [plaintiff's] speech related to a matter of public concern, or involved both private and public issues, then <u>Pickering</u> requires a balancing of [plaintiff's] interest in the speech against the interest of her employer." <u>Id.</u> at 1014. We conclude that the latter statement is more consistent with <u>Connick</u>.

Defendant contends that the "tidbit" of plaintiff's speech touching on matters of public concern is not entitled to protection under the first step in the <u>Pickering</u> analysis because the personal content of plaintiff's speech dwarfs the public concern content. We disagree. In <u>Connick</u>, the state discharged an assistant district attorney who had distributed a multi-question questionnaire concerning office policy, morale, and employee confidence in supervisors. The Court determined that only one question touched on a matter of public concern, that being whether employees felt pressured to work in political campaigns. The plaintiff's "questionnaire touched upon matters of public concern in only a most limited sense; her survey, in our view, is most accurately characterized as an employee grievance concerning internal office policy." <u>Connick</u>, 461 U.S. at 154, 103

S.Ct. at 1693.  Nonetheless, the Court proceeded to the second step of the <u>Pickering</u> analysis, <u>i.e.</u>, the balancing of interests.

We hold that the limited portions of plaintiff's speech that touch on matters of public concern are sufficient to satisfy the first step of the <u>Pickering</u> analysis.  Of course, our holding does not suggest that a "tidbit" of content touching on matters of public concern will entitle the body of speech, as a whole, to constitutional protection.  When a body of speech contains only a "tidbit" of content touching on matters of public concern, the employee's interest in that speech is very limited.  Further, the entire body of the speech is considered when evaluating the state's interest.  <u>See</u> <u>Johnsen, R.N., v. Independent School District No. 3 of Tulsa County, Oklahoma</u>, 891 F.2d 1485,  1492-93 (10th Cir. 1989) ("Therefore, because the speech was a concerted, cohesive campaign on a single subject, the speech should be considered in its entirety for purposes of the <u>Pickering</u> balancing test.").  Hence, although not excluded from protection by the first step of the <u>Pickering</u> analysis, a body of speech with only a "tidbit" of content touching on matters of public concern often will not be entitled to protection under the second step.

Under the second step of the <u>Pickering</u> analysis, we "balance the employee's interest in commenting upon matters of public concern 'against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" <u>Dill</u>, 155 F.3d at 1201 (quoting <u>Pickering v. Board of Education</u>, 391 U.S. 563, 568, 88 S. Ct. 1731 (1968)).  As noted above, plaintiff has at least a cognizable

interest as his speech touches on matters of public concern. In evaluating the employer's interest, we consider "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." Rankin v. McPherson, 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987).

Rahn's notice of contemplated disciplinary action and notice of final disciplinary action advised Finn that his wide distribution of venomous documents had a negative impact on the working environment within the Department. Aplt.App. at 71, 76-77. Roybal also told plaintiff that he was "refusing to perform the duties properly assigned to [him]," and that plaintiff was misusing Department resources "including the use of [his] productive time." Id. at 71-72, 77. Despite these assertions, defendant has provided no evidence of actual disruptions. In fact, defendant concedes that "the only evidence in the record is appellant's undisputed evidence attesting to the disruption to the department caused by plaintiff's incendiary, scurrilous memos." Aplt. Brief, at 31-32. This is determinative under Pickering because speculative assertions of workplace disruption are insufficient to establish a governmental interest in terminating plaintiff's speech. See Wulf v. City of Wichita, 883 F.2d 842, 862 (10th Cir. 1989). See also Gardetto, 100 F.3d at 815-16 (holding that an employer cannot rely on "purely speculative allegations that certain statements caused or will cause disruption."). In fact, the employer must show

"actual disruption of services which results from the employee's speech." Ramirez v. Oklahoma Dept. of Mental Health, 41 F.3d 584, 594 (10th Cir. 1994). Because defendant has failed to provide evidence of an actual workplace disruption, the state cannot establish an interest in prohibiting plaintiff's speech. We thus conclude that the district court properly denied summary judgment for defendant because plaintiff's speech is entitled to First Amendment protection.

The next issue in this appeal is whether Secretary Rahn is entitled to qualified immunity. "Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." Prager v. LaFaver, 180 F.3d 1185, 1190 (10th Cir. 1999) (citation and internal quotation marks omitted).

We analyze the trial court's denial of defendant's request for qualified immunity using a two-part test. First, we determine whether plaintiff has met his burden of "coming forward with sufficient facts to show that the defendant's actions violated a federal constitutional or statutory right." Baptiste v. J.C. Penney Co., Inc., 147 F.3d 1252, 1255 (10th Cir. 1998). If so, we then consider whether the law clearly established the violated right at the time of the alleged conduct at issue. Id. at 1255 n. 6. For plaintiff to prevail, there must have been "a Supreme Court or other Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law

to be as the plaintiff maintains." Murrell v. School Dist. No. 1, Denver, 186 F.3d 1238, 1251 (10th Cir. 1999) (citations and internal quotation marks omitted). However, there need not be binding precedent on "all fours" with the current case; instead, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In short, we require some, but not identical, correspondence between the cases cited and the factual situation in the case at hand. Horstkoetter v. Department of Public Safety, 159 F.3d 1265, 1278 (10th Cir. 1998).

Under the first step, we upheld the district court's denial of summary judgment for defendant on plaintiff's First Amendment claim. Therefore, we also conclude that plaintiff has presented sufficient facts to show that defendant's actions violated plaintiff's constitutional rights.

The significant date in this case is September 7, 1995, when Rahn issued plaintiff's termination notice. We agree with the district court that precedent clearly established before 1995 that an employee "may not be dismissed in retaliation for lawful exercise of first amendment freedoms." Ware v. Unified School Dist. No. 492, Butler County, State of Kan., 902 F.2d 815, 819 (10th Cir. 1990) (citing Greminger v. Seaborne, 584 F.2d 275, 279 n. 4 (8th Cir.1978)). We also conclude that existing case law clearly established that speech such as plaintiff's touched on matters of public concern and that the employee's interest in such speech would outweigh unsubstantiated assertions of workplace

disruption. <u>See</u> <u>Wulf</u>, 883 F.2d at 862. Defendant's own recognition that plaintiff's speech "deal[t] with matters about which [plaintiff had] the prerogative to pursue as disputes with management," Aplt.App. at 71, further supports our conclusion. Finally, we are convinced that pre-September 1995 case law clearly established that the defendant's decision to terminate plaintiff in retaliation for his protected speech was actionable. Hence, the district judge properly rejected the qualified immunity defense and properly denied Rahn's motion for summary judgment on plaintiff's First Amendment claim. Accordingly, his order denying summary judgment in both instances is AFFIRMED.