Phillip BLUME and Daniel
Jaramillo, Plaintiffs,

v.

David MENELEY and Shawnee
County, Kansas,
Defendants.

Civil Action No. 00–2559–CM.

United States District Court,
D. Kansas.

Sept. 25, 2003.

Elizabeth R. Herbert, Pedro L. Irigonegaray, Robert V. Eye, Irigonegaray & Associates, Topeka, KS, Fred L. Slough, Slough, Connealy, Irwin & Madden, Kansas City, MO, for Plaintiffs.

Alan L. Rupe, S. Douglas MacKay, Husch & Eppenberger, LLC–Wichita, Wichita, KS, David P. Mudrick, K. Gary Sebelius, Kevin James Grauberger, Thomas E. Wright, Wright, Henson, Somers, Clark & Baker LLP, Topeka, KS, for Defendants.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

Pending before the court are defendants' Motions for Summary Judgment (Docs. 91 and 93). Plaintiffs are employees of the Shawnee County Sheriff's Department ("Sheriff's Department"). Defendant David Meneley is the former Sheriff of Shawnee County. Defendant Shawnee County Board of Commissioners ("Board") oversees the Shawnee County government, including the Sheriff's Department. Plaintiffs filed this case on December 14, 2000, alleging that defendants violated plaintiffs' rights under 42 U.S.C. § 1983 and the First Amendment when defendants made defamatory remarks about plaintiffs and denied plaintiffs promotions. Plaintiffs allege that defendants took these actions in retaliation after plaintiffs made allegations to outside law enforcement agencies regarding internal corruption. Both defendant Meneley and defendant Board ask this court to grant summary judgment in defendants' favor. For the reasons stated below, both Motions for Summary Judgment are denied in part and granted in part.

● Facts[1]

Plaintiff Dan Jaramillo has worked for the Sheriff's Department since August

---

1. The court construes the facts in the light most favorable to plaintiffs as the non-moving

1980. In 1986, plaintiff Jaramillo was assigned to the Narcotics Unit. Plaintiff Jaramillo was promoted to Detective in the Narcotics Unit in 1989. From May 1994 through December 1995, plaintiff Jaramillo was assigned to the FBI Violent Crimes Task Force (Task Force).

Plaintiff Phillip Blume joined the Sheriff's Department in 1989. In August 1990, plaintiff Blume was assigned to the Narcotics Unit, where he served until he was reassigned in April 1996. From about June 1994 through December 1995, plaintiff Blume was also assigned to the Task Force.

Plaintiffs state that, in July 1995, during a meeting regarding their work on the Task Force, defendant Meneley asked plaintiffs if they had dealt with any problems of missing drug evidence. When plaintiffs replied they had not, defendant Meneley explained to plaintiffs that Deputy Timothy Oblander had developed a drug addiction while working in the Narcotics Unit and that defendant Meneley believed Oblander was responsible for stealing drug evidence from the drug locker.

Plaintiffs allege that defendant Meneley stated Oblander was undergoing drug addiction treatment and rehabilitation. Defendant Meneley allegedly told plaintiffs that Oblander had been stealing the drugs and replacing them with other substances. Plaintiff Jaramillo then asked how the office would handle those cases in which drug evidence had been altered. Defendant Meneley claimed there was no problem with those cases and that the prosecutor would continue to pursue them as usual. He also cautioned plaintiffs against disclosing the information concerning Oblander and the drug theft and told plaintiffs that, if the information was leaked, he would know plaintiffs had leaked it.

Plaintiffs did not disclose the information revealed by defendant Meneley until FBI Agent Ron Elder approached plaintiff Jaramillo in December 1995. Agent Elder asked plaintiff Jaramillo if he had any information regarding drugs missing from the Sheriff's Department. At that time, plaintiff Jaramillo told Agent Elder what defendant Meneley had disclosed to him in July 1995.

In January 1996, plaintiff Jaramillo told Shawnee County Assistant District Attorney Tony Rues about Oblander's drug theft and use, as well as defendant Meneley's knowledge of Oblander's activities. On February 23, 1996, the Topeka Capital Journal published a story concerning a Kansas Bureau of Investigation (KBI) investigation into the missing drugs. After the story was published, defendant Meneley asked two officers, Major Pierce and Captain Lovelace, to question certain employees, including plaintiffs, to determine who leaked the information to the Capital Journal.

Plaintiffs denied leaking the information, but plaintiff Jaramillo proceeded to tell the two officers about defendant Meneley's disclosures regarding Oblander's theft and use of the drugs. Captain Lovelace was apparently unaware of defendant Meneley's knowledge of Oblander's actions, as Captain Lovelace had previously conducted an internal investigation into the missing drug evidence but had run out of leads during his investigation.

Plaintiffs also told Lovelace and Pierce that they had already gone to the prosecutor's office with defendant Meneley's disclosures. After Lovelace and Pierce told defendant Meneley the details of their conversation with plaintiffs, Major Pierce allegedly warned plaintiff Jaramillo to be

parties pursuant to Fed.R.Civ.P. 56.

cautious of defendant Meneley's anger toward plaintiffs.

On March 26, 1996, defendant Meneley told a KBI investigator that plaintiffs had lied about the missing drugs and defendant Meneley's knowledge of Oblander's activities. On the same date, and on dates thereafter, plaintiffs continued to assist the KBI in its investigation.

Plaintiffs claim that they had good relationships with defendant Meneley prior to Meneley's July 1995 disclosure. Plaintiffs state that defendant Meneley highly recommended each of them for the Task Force. Plaintiffs also state that, prior to August 1995, both plaintiffs consistently received good evaluations, and defendant Meneley had never criticized their work ethic or results. However, defendant Meneley decided to remove Blume and Jaramillo from the Task Force as of January 1996. Plaintiffs also state that, in the late fall of 1995 through February 1996, defendant Meneley began to criticize the way plaintiffs pursued their narcotics cases and threatened to fire plaintiffs or transfer them out of the Narcotics Unit.

On March 13, 1996, defendant Meneley announced in a command staff meeting that plaintiffs were being removed from the Narcotics Unit and transferred to the Patrol Division effective April 1, 1996.

On December 7, 1998, plaintiff Jaramillo interviewed for the position of Special Services Sergeant. On the same day, the KBI released its report detailing the investigation into the missing drug evidence. Among those who received that report were defendant Meneley and a defense attorney named William Rork. Rork purchased two copies of the report-one for him, and one for defendant Meneley-and told the Topeka Capital Journal that he was reviewing the report for defendant Meneley. During plaintiff Jaramillo's interview, defendant Meneley received a telephone call from Rork. When defendant Meneley returned from taking Rork's call, his questions to Jaramillo began to focus on the reason for his transfer from the Narcotics Unit.[2]

On December 10, 1998, the Topeka Capital Journal published a story in which defendant Meneley referred to plaintiffs as liars. This quote was reprinted in subsequent editions of the Topeka Capital Journal as well.

The promotion panel determined that none of the candidates for the Special Services Sergeant position were qualified and sought out a new slate of candidates. The panel finally chose Officer "B."[3] Officer B and plaintiff Jaramillo had each taken the sergeant's exam. In order to be considered for the promotion, plaintiff Jaramillo had to finish in the top three on this exam. The Civil Service Commission administered the exam, which consisted of objective testing and subjective interviews.

Plaintiff Jaramillo had achieved a higher score than Officer B on the sergeant's exam. There is some disagreement between the parties regarding whether plaintiff Jaramillo or Officer B were objectively more qualified for the position. There is also disagreement regarding whether plaintiff Jaramillo had been disciplined or

---

**2.** While the details are not spelled out for the court, it is clear that plaintiff Jaramillo perceived that defendant Meneley was hostile toward him when defendant Meneley returned from his phone call. A jury could reasonably infer that his hostility was a result of learning the contents of the KBI report. A jury could also infer that any hostility defendant Meneley exhibited could have affected the scores of other panelists.

**3.** Because this case involves sensitive personnel issues, the parties have agreed to keep under seal the names of those deputies who were ultimately promoted.

criticized in the past for his work in the Narcotics Unit. However, the record is clear that Officer B had been the center of a domestic disturbance at his home in 1996, and some fellow officers felt he was hard to trust and had a bad temper. Some of the testimony of fellow officers also indicates that defendant Meneley did not discipline Officer B for this domestic disturbance, nor did he require Officer B to seek a psychological evaluation.

Captain Dan Bryant served on the promotions panel for plaintiff Jaramillo's interview. Bryant stated that defendant Meneley had the ultimate decision on promotions. He also stated that he felt plaintiff Jaramillo was a more qualified candidate for the position than Officer B, but that defendant Meneley applied pressure on the promotions panel and made it clear that plaintiffs were not to be promoted because of the animosity between plaintiffs and defendant Meneley.[4]

Plaintiff Blume interviewed for a promotion to Detective in February 1999. Blume had consistently received positive reviews, although there is disagreement between the parties regarding his performance as a School Resources Officer. Plaintiff Blume was passed over for the promotion, which was given to Officer "A." Officer A had worked for the Sheriff's Department for only two years and had already been reprimanded while working at the jail. In June 1998, Officer A had received poor evaluations, indicating his inclination to complain about his assignments, his loss of composure when dealing with the public, his unwillingness to do certain tasks, his condescending attitude toward his superiors, and his need for supervision. His evaluations in January 1999, just before his promotion, were

equally poor. However, in spite of these apparent shortcomings, all members of the promotion panel scored Officer A significantly higher than plaintiff Blume.

Interestingly, plaintiff Blume and Officer A had each been considered for a promotion in September 1998. While Blume scored low in both interviews, Officer A's scores were markedly improved: in September, defendant Meneley scored Officer A at 3 points out of 10; in February, he scored Officer A at 9.

At various times after the KBI investigation became public, defendant Meneley and his agents made statements to the press that plaintiffs were "liars" and "disgruntled employees." Defendant Meneley was generally the only Sheriff's Department employee allowed to speak to the press; any other statements had to be approved by him.

● **Analysis**

● **Standards**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202

---

**4.** Captain Bryant later made contradictory statements in his deposition; however, the court concludes that the inconsistency in his testimony creates a question of credibility for the jury.

(1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## • Defamation Issues

In the pretrial order, plaintiffs contend that defendant Meneley referred to them as "liars" and "disgruntled employees" in retaliation for plaintiffs' statements to and cooperation with the law enforcement agencies that investigated the Sheriff's Department. As defendants correctly note, however, plaintiffs did not preserve in the pretrial order any retaliation claim stemming from defendants' statements. The pretrial order indeed controls the subsequent course of the litigation, and the trial court may "exclude from trial those issues and claims not found in the pretrial order." *Hullman v. Bd. of Trs.,* 950 F.2d 665, 668 (10th Cir.1991) (citation omitted). Although the pretrial order required only that plaintiffs set forth their factual contentions and general theories of recovery, *Berroth v. Farm Bureau Mut. Ins. Co., Inc.,* 232 F.Supp.2d 1244, 1249, n. 7 (D.Kan.2002), plaintiffs have not set forth any theory of recovery regarding the allegedly defamatory statements. Plaintiffs have, therefore, waived this claim, and the court grants summary judgment with respect to this claim. *See Parsells v. Manhattan Radiology Group, L.L.P.,* 255 F.Supp.2d 1217–1225, n. 3 (D.Kan.2003) (citing *Wilson v. Muckala,* 303 F.3d 1207, 1215 (10th Cir.2002)).

## • Failure to Promote: Statute of Limitations Issues

Plaintiffs bring their failure to promote claims pursuant to § 1983. Plaintiffs and defendants agree that plaintiffs' claims regarding promotion and placement issues are therefore governed by the two-year Kansas statute of limitations for injury to the rights of another. *See* Kan. Stat. Ann. § 60-513(a)(4). Plaintiffs' lawsuit was filed on December 14, 2000, so the court will consider only those claims relating to actions occurring on or after December 14,

1998. Most of plaintiffs' claims arise from conduct that precedes the limitations period. While plaintiffs have advanced a continuing violation doctrine argument, the court finds that the continuing violation doctrine is inapplicable.

■ The Tenth Circuit has held that the continuous violation doctrine is not applicable to § 1983 claims. *See Rassam v. San Juan Coll. Bd.*, 113 F.3d 1247, (10th Cir. 1997) (unpublished opinion). This court has also declined to apply the continuous violation doctrine to § 1983 claims. *See Ratts v. Bd. of County Comm'rs*, 141 F.Supp.2d 1289, 1313 (D.Kan.2001) (citations omitted); *see also McCormick v. Farrar*, No. Civ. A. 02–2037–GTV, 2003 WL 1697686, *4 (D.Kan. Mar.20, 2003). The court declines to apply the continuing violation doctrine. Therefore, the statute of limitations limits plaintiffs' failure to promote claims to the following instances:

> In December 1998, Plaintiff Jaramillo was denied a promotion to a sergeant's position in the Narcotics Unit.[5]

Plaintiff Blume applied for, but was denied, a promotion to a detective position in February 1999.

● **Failure to Promote: Plaintiffs' Prima Facie Case**

The court analyzes plaintiffs' failure to promote claims under the framework set forth in *Pickering v. Bd. of Educ. of Tp. High Sch. Dist. 205, Will County, Ill.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) and *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). The Tenth Circuit interpreted these cases and derived a four-part test in *Dill v. City*

*of Edmond*, which held that "a public employer cannot retaliate against an employee for exercising his constitutionally protected right of free speech." 155 F.3d 1193, 1201 (10th Cir.1998).

■ We apply a four-part test in evaluating plaintiff's First Amendment retaliation claim. First, we must determine whether the employee's speech involves a matter of public concern. If so, we then balance the employee's interest in commenting upon matters of public concern against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. Third, if the balance tips in favor of the employee, the employee then must show that the speech was a substantial factor or a motivating factor in the detrimental employment decision. Fourth, if the plaintiff establishes that speech was such a factor, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech.

■ *Finn v. N.M.*, 249 F.3d 1241, 1247 (10th Cir.2001) (applying *Dill v. City of Edmond*) (internal quotations and citations omitted). The first two elements are questions of law; the two final elements address causation and involve questions of fact. *Dill*, 155 F.3d at 1202 (citing *Gardetto v. Mason*, 100 F.3d 803, 811 (10th Cir. 1996)).

● **Speech Involving a Matter of Public Concern**

■ The threshold question in assessing whether plaintiffs engaged in protected

---

**5.** Defendants argue that this claim is also time-barred because the interview took place on December 7, 1998. However, plaintiff Jaramillo did not receive official notice that he was denied the promotion until December 18, 1999. Courts look to the point at which plaintiff "knew of the fact of injury, rather than the extent of the injury, to determine

when an injury occurs for purposes of the statute of limitations." *E.E.O.C. v. Gen. Motors Corp.*, 713 F.Supp. 1394, 1395 (D.Kan. 1989). In this case, the court concludes that plaintiff Jaramillo did not know of the fact of the injury until he received notification on December 18, 1999. Therefore, his claim was timely filed.

speech is whether plaintiffs spoke as citizens upon matters of public concern or merely as employees upon matters of only personal interest. "Matters of public concern are those which can be fairly considered as relating to any matter of political, social, or other concern to the community." *Finn,* 249 F.3d at 1247 (internal citations omitted).

Defendants argue that plaintiffs' disclosures were personal in nature and resulted from plaintiffs' grudge against defendant Meneley. Defendants cite numerous cases in which courts have held that speech did not address matters of public concern; these cases include instances where the speech in question addressed internal policies and personnel problems. Unlike those cases cited by defendants, the court concludes that plaintiffs' speech in this case addressed a matter of public concern.

■ While speech pertaining to internal personnel disputes and working conditions ordinarily will not involve public concern, *Connick,* 461 U.S. at 148, 103 S.Ct. 1684, " '[s]peech that seeks to expose improper operations of the government or questions the integrity of governmental officials clearly concerns vital public interests.' " *Finn,* 249 F.3d at 1247 (quoting *Conaway v. Smith,* 853 F.2d 789, 797 (10th Cir.1988)). Plaintiffs disclosed to the FBI and, later, to other law enforcement agencies, that they believed Deputy Oblander was stealing narcotics from evidence for his personal use. Additionally, plaintiffs told the FBI that defendant Meneley was aware of Deputy Oblander's theft and cocaine addiction. The ramifications of these disclosures included acquittals of defendants whose drug evidence had been compromised by Deputy Oblander's theft and use, the discharge of Deputy Oblander, and the ouster of defendant Meneley. This type of personnel problem is a matter of public concern because it compromised

the entire criminal justice process for drug cases originating in Shawnee County.

Regardless of the admitted animosity plaintiffs felt after being denied promotions they each felt they deserved, as well as any personal motives plaintiffs may have had in coming forward with their disclosures, the court finds as a matter of law that plaintiffs' disclosures addressed matters of public concern.

● **Plaintiffs' Interest Balanced Against Defendants' Interest**

■ The second element of plaintiffs' prima facie case is the balance of "the employee's interest in commenting upon matters of public concern 'against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Dill,* 155 F.3d at 1201 (quoting *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731). Plaintiffs have an interest in making the disclosures because they touched on matters of public concern. In evaluating the employer's interest, we consider "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987).

■ There is no evidence in the record to suggest that the day-to-day functions of the Shawnee County Sheriff's Department were disrupted by plaintiffs' disclosures, except to the extent that the disclosures led to an intensive investigation into the activities of the Sheriff's Department and its employees. However, this disruption was set into action by the allegedly illegal activity taking place inside the department in the first place. The court finds as a

matter of law that the plaintiffs' interest in shedding light on Deputy Oblander and defendant Meneley's alleged conduct, as well as the interest of the public in putting a stop to the activity, clearly outweighs the Sheriff's Department's interest in concealing that activity. Moreover, the court concludes that defendants have made no showing that any of the Sheriff's Department services or operations were disrupted as a result of plaintiffs' disclosures. Therefore, plaintiffs have established this second element of their prima facie case. *See Ramirez v. Okla. Dep't of Mental Health,* 41 F.3d 584, 594 (10th Cir.1994) (stating that employer must show "actual disruption of services which results from the employee's speech").

● **Substantial or Motivating Factor**

Plaintiffs allege that, as a result of their disclosures to law enforcement agencies about Deputy Oblander's drug use and theft and defendant Meneley's knowledge thereof, defendants took detrimental employment action against plaintiffs by denying them promotions. "Because employer action short of discharge may violate an employee's First Amendment rights, these allegations are sufficient to raise an inference that [d]efendants retaliated against [plaintiffs] because of [plaintiffs'] speech." *Dill,* 155 F.3d at 1204 (internal citations omitted).

● **Whether Defendants Would Have Taken the Same Action Regardless of Protected Speech**

Finally, viewing the facts in the light most favorable to plaintiffs, the court is unable to conclude that defendants would have taken the same action against plaintiffs in the absence of the protected speech. Therefore, questions of material fact exist as to this element, and summary judgment is not appropriate.

● **Qualified Immunity**

The court must next address whether defendant Meneley is entitled to qualified immunity. "Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known." *Prager v. LaFaver,* 180 F.3d 1185, 1190 (10th Cir.1999) (citation and internal quotation marks omitted).

The court uses a two-part analysis to determine whether the qualified immunity doctrine applies. First, the court must determine whether plaintiffs have "asserted a violation of a constitutional right." *Dill,* 155 F.3d at 1204 (quoting *Albright v. Rodriguez,* 51 F.3d 1531, 1534–35 (10th Cir.1995)).

If plaintiffs allege "a valid claim, then we must determine whether the constitutional right was clearly established so that reasonable officials would have understood that their conduct violated that right." *Id.*

As outlined above, an employer may not retaliate against an employee for exercising his First Amendment rights. Plaintiffs have alleged facts sufficient to support a finding that defendants retaliated against them for exercising their First Amendment rights. Therefore, plaintiffs have asserted a violation of a constitutional right. *See Dill,* 155 F.3d at 1204.

In addressing the second step, the significant time period in this case is from December 7, 1998, when plaintiff Jaramillo interviewed for the promotion, to December 18, 1998, when defendant Meneley informed plaintiff Jaramillo that he would not receive the promotion. Tenth Circuit precedent clearly established before 1998 that the alleged conduct would have violated plaintiffs' constitutional rights. Em-

ployer retaliation short of discharge may violate an employee's First Amendment rights. *Rutan v. Republican Party of Ill.,* 497 U.S. 62, 72, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). The court also concludes that existing case law clearly established that speech such as plaintiffs' touched on matters of public concern and that the employees' interest in such speech would outweigh unsubstantiated assertions of workplace disruption. See *Conaway,* 853 F.2d at 797, and *Ramirez,* 41 F.3d at 594. Therefore, the court rejects defendant Meneley's qualified immunity defense.

### ● Exhaustion of Remedies

Defendant Meneley argues that plaintiffs' claims against him are barred because plaintiffs failed to avail themselves of the internal grievance policies of the Sheriff's Department. Defendant Meneley asks the court to extend the Supreme Court's holdings in *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). The court concludes that these cases are clearly distinguishable from the present case and declines to extend the holdings to this case.

Defendant Meneley argues that these two cases, which address employers' sexual harassment liability, are analogous to the present case. *Faragher* outlines an affirmative defense to a vicarious liability claim if the defendant employer exercised reasonable care to cure the situation, and if the plaintiff unreasonably failed to take advantage of corrective measures provided by the employer. *Faragher,* 524 U.S. at 776, 118 S.Ct. 2275. Defendant Meneley

asks the court to interpret this affirmative defense as requiring plaintiffs to exhaust any administrative remedies at their disposal. However, the court does not agree that the Supreme Court intended to require all employees to exhaust internal grievance procedures before bringing their cases in federal court.

This court has only applied *Faragher* and *Burlington* to cases of sexual harassment. To date, the court has not extended the holding to encompass all employment discrimination cases. Assuming, without deciding, that the *Faragher/Burlington* defense applies to all employment discrimination cases, the court concludes that the defense would not bar plaintiffs' recovery in this case. "The *Faragher/Burlington* affirmative defense can only be raised if 'no tangible employment action [wa]s taken' by the harassing supervisor against the plaintiff employee." *Harrison v. Eddy Potash, Inc.,* 248 F.3d 1014, 1024 (10th Cir.2001) (quoting *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275), *cert. denied,* 534 U.S. 1019, 122 S.Ct. 543, 151 L.Ed.2d 421 (2001). In this case, the asserted retaliation-failure to promote-is a tangible employment action. *Burlington,* 524 U.S. at 761, 118 S.Ct. 2257 (stating that "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"). The court finds, therefore, that the *Faragher/Burlington* defense is not available to defendant Board.[6]

### ● Punitive Damages

Defendant Meneley argues that plaintiffs should be barred from recovering

---

**6.** Defendants have also argued that plaintiffs did not mitigate their damages by pursuing appeals when they were denied their promotions. There is no evidence before the

court to suggest that plaintiffs had a duty to mitigate their damages, so the court does not consider this argument.

punitive damages because they cannot prove that defendant Meneley's motives were evil or that he was recklessly or callously indifferent to plaintiffs' federally protected rights. The court concludes that there are genuine issues of material fact as to defendant Meneley's motives and his state of mind. These issues can only be resolved by a jury evaluating the evidence and the credibility of the witnesses at trial. Therefore, the court denies defendant Meneley's Motion for Summary Judgment as to plaintiffs' request for punitive damages.

### • Defendant Shawnee County Board's Liability for Defendant Meneley's Actions

Finally, defendant Board argues that it cannot be held vicariously liable for defendant Meneley's actions. Local governing bodies can be sued "for monetary, declaratory, or injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The court concludes that plaintiffs have alleged evidence sufficient to support the finding that defendant Board is vicariously liable for the denials of promotions to plaintiffs. There are unresolved questions of fact regarding what influence defendant Meneley had over others who sat on the two promotions panels. The uncontroverted facts, however, indicate that plaintiffs were denied promotions by the panels and that the decision to deny them promotions was implemented by the Sheriff's Department. Defendant Board does not argue that it has no oversight power over the Sheriff's Department. Therefore, the court concludes that a jury could find that defendant Board is vicariously liable for the failure to promote plaintiffs. Defendant Board's Motion for Summary Judgment is denied as it concerns vicarious liability.

**IT IS THEREFORE ORDERED** that defendants' Motions for Summary Judgment (Docs. 91 and 93) are hereby granted in part and denied in part. Summary judgment is granted as to plaintiffs' defamation claims and those retaliation claims arising prior to December 14, 1998. Summary judgment is denied as to plaintiffs' failure to promote claims arising on or after December 14, 1998.

---

Additionally, Defendant Meneley argues that he would be entitled to summary judgment on plaintiffs' retaliation claims if the court were to apply *Faragher* and *Burlington Industries*. However, these two cases dealt with vicarious liability issues. Even if the court were to conclude that these two cases applied to plaintiffs' claims, defendant Board is the only party that would benefit. The *Faragher/Burlington* defense is an affirmative defense to be raised by the employer, not the employee engaging in prohibited conduct.