ORDER AND JUDGMENT*
WILLIAM J. HOLLOWAY, JR., Circuit Judge.
This case is an appeal from a dismissal under Fed.R.Civ.P. 12(b)(6) in a § 1988 suit alleging violation of First Amendment Rights. Plaintiff, Brenda Lander, sued the Summit County Colorado School District and Frisco Elementary Principal Janis Bunchman, and Superintendent Wes Smith in their individual capacities, alleging her employment contract was not renewed and she received false and derogatory employment references in violation of her First Amendment right to speak on matters of public concern. The district court dismissed her First Amendment claim concluding her statements did not involve matters of public concern, and it declined to exercise supplemental jurisdiction over the state law claims. Lander thinks the district court erred in dismissing her complaint and, alternatively, argues it should have allowed her to amend.
For the reasons detailed below, we find the district court erred in concluding Lander’s statements did not pertain to a matter of public concern. Accordingly, we REVERSE the grant of summary judgment for the defendants.
I

Background

Plaintiff Brenda Lander (Lander) was employed as a Library Media Specialist at Frisco Elementary School, where she taught computer and technology classes, and managed technological support and the media program. Appellant App. at 7,8. Her duties included purchasing and monitoring technological support and technology supplies for the entire school, as well as coordinating and evaluating media programs. Id. at 8.
In the Spring of 2000, Frisco Elementary Principal Janis Bunchman (Bunchman) imposed a requirement that all media specialists would have to teach classes through the last day of school. Id. In response, and on behalf of the media specialists, Lander complained to the administration and the education association “that this requirement made it impossible for these teachers to complete their job duties without working unpaid overtime and that the requirement was detrimental to the maintenance of school equipment and the efficient functioning of the school libraries.” Id. According to Lander, her statements angered Bunchman, who altered Lander’s teaching schedule for the 2000-2001 school year. Specifically, Lander alleged Bunchman required her to teach “back-to-back half hour classes on Fridays with no breaks or passing periods between student groups.” Id. In reply, Lander complained to Bunchman “that half hour lessons were inadequate and would deprive students of a quality education, but Bunch-man refused to amend the schedule.” Id.
At the beginning of the 2000-2001 school year, Lander reviewed Frisco Elementary’s technology budget
for which she was responsible, and noticed that approximately 22% of that *217 budget had been spent over the summer without her knowledge and in contravention of the consensus of the staff, on out-of-date program contracts previously vetoed by the staff, duplicative contracts for software support already available at the school, and a software upgrade that was not operational on any student computers.
Id. at 9. When she inquired, Lander learned that Bunehman had authorized the purchase by “a new reading teacher at the school, who was also the wife of a sitting school board member.” Id. Lander complained to Bunehman “that the expenditures were a waste of school resources, in derogation of the decision made by the faculty, and an indefensible expenditure.” Id.
Near the close of the 2000-2001 school year, Bunehman informed Lander she would not recommend the renewal of Lander’s teaching contract for the 2001-2002 school year. Id. at 12. Lander claims the decision was based on a false evaluation stemming from a number of things, including her comments on the technology budget, half-hour technology lessons, and the requirement that media specialists teach on the last day of school. Id. Superintendent Wes Smith informed Lander that based solely upon Bunchman’s recommendation, he would recommend to the school board that her contract not be renewed. Id. After her contract was not renewed, Lander then interviewed for and was offered two separate positions in another district. But, according to her complaint, these offers were revoked after Bunehman and Smith provided false and negative references. Id. at 14.
In addressing the School District’s motion to dismiss under Rule 12(b)(6), the district court noted that the subject of education in general is likely a matter of public concern, but also recognized the need to look beyond the general subject matter to the actual statements to see if they were, in fact, focused on matters of public concern. It concluded they were not and dismissed the complaint. Supplemental jurisdiction over her state law claims was declined and the claims were dismissed without prejudice.[1] Finally, the district court refused her very generalized motion to amend.
II

Discussion

A

First Amendment Claims

We review de novo the district court’s decision to dismiss Lander’s complaint under Rule 12(b)(6). Ordinance 59 Ass’n v. U.S. Dep’t of Interior Secretary, 168 F.3d 1150, 1152 (10th Cir.1998). We consider the complaint as a whole, accept all wellpled factual allegations as true, and view those allegations, and reasonable inferences therefrom, in a light most favorable to the non-moving party. Sutton, 173 F.3d at 1236; Dill v. City of Edmond, 155 F.3d 1193, 1201 (10th Cir.1998). Dismissal under “[a] 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.” Sutton, 173 F.3d at 1236 (citations and quotations omitted). Yet, we need not accept a party’s conelusory allegations as true. Southern Disposal, Inc. v. Texas Waste Mgmh, 161 F.3d 1259, 1262 (10th Cir.1998). Nor may a party “overcome pleading deficiencies with arguments that extend beyond the allegations contained in the complaint.” Bauchman *218 for Bauckman v. West High School, 132 F.3d 542, 550 (10th Cir.1997), cert. denied, 524 U.S. 953, 118 S.Ct. 2370, 141 L.Ed.2d 738 (1998). “Whether speech involves a matter of public concern is a question of law to be determined de novo.” Edwards v. City of Goldsboro, 178 F.3d 231, 246 (4th Cir.1999) (citation omitted).
“[A] public employer cannot retaliate against an employee for exercising [her] constitutionally protected right of free speech.” Dill, 155 F.3d at 1201 (citing Connick v. Myers, 461 U.S. 138, 146-47, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). To determine “whether a public employer’s actions impermissibly infringe on free speech rights, we apply the four-prong test articulated in Pickering v. Bd. of Educ., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).” Burns v. Board of County Comm’rs of Jackson County, 330 F.3d 1275, 1285-86 (10th Cir.2003) (footnote omitted).
First, we must determine whether the employee’s speech involves a matter of public concern. If so, we then balance the employee’s interest in commenting upon matters of public concern against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. Third, if the balance tips in favor of the employee, the employee then must show that the speech was a substantial factor or a motivating factor in the detrimental employment decision. Fourth, if the plaintiff establishes that speech was such a factor, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech.
Finn v. New Mexico, 249 F.3d 1241, 1247 (10th Cir.2001) (internal citations and quotations omitted). Here, the sole issue before us is whether, as alleged in her complaint, Lander’s speech involved a matter of public concern and thereby satisfied the initial threshold determination of this four-pronged approach. Id. at 1247. If her “speech cannot be fairly characterized as constituting speech on a matter of public concern, it is unnecessary ... to scrutinize the reasons for her discharge [non-renewal].” Saye v. St. Vrain Valley School Dist. RE-1J, 785 F.2d 862, 866 (10th Cir.1986) (quoting Connick, 461 U.S. at 146, 103 S.Ct. 1684).
‘Whether an employee’s speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.” Connick, 461 U.S. at 147-48. In determining whether her speech touched on matters of public concern, we look to “whether the public or the community is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as essentially a private matter between employer and employee.” Edwards v. City of Goldsboro, 178 F.3d 231, 247 (4th Cir.1999) (quoting Berger v. Battaglia, 779 F.2d 992, 999 (4th Cir.1985) (internal quotation marks omitted)).
To qualify as a matter of public concern, the speech in question must do more than merely fall within a topic that is of general interest to the public; rather the specific articulation must touch on a matter of public concern. See Burns, 330 F.3d at 1286; Moore v. City of Wynnewood, 57 F.3d 924, 932 (10th Cir.1995). Yet, “the choice to speak through a private forum, rather than a public one, does not remove the speech from First Amendment protection.” Lee v. Nicholl, 197 F.3d 1291, 1295 (10th Cir.1999) (citations omitted).
In this case, Lander alleges she spoke on two areas of public concern: the waste of the school’s technology budget and the reduction of classroom time. We agree *219 because the first subject relates to malfeasance on the part of a public official and the second relates to the quality of public education.
1

Public malfeasance

The first subject Lander claims was a matter of public concern was her criticism of how the school’s technology budget was spent. In her complaint, Lander states:
approximately 22% of [the school’s technology] budget had been spent over the summer without Plaintiffs knowledge and in contravention of the consensus of the staff, on out-of-date program contracts previously vetoed by the staff, duplicative contracts for software support already available at the school, and a software upgrade that was not operational on any student computers.
Appellant’s App. at 9. Lander goes on to provide context for the alleged mis-allocation of school funds:
Defendant Bunchman revealed to Plaintiff that she had given those monies to a new reading teacher at the school, who was also the wife of a sitting school board member, and that Defendant Bunchman had allowed the board member’s wife to purchase the materials over the summer.
Id. In other words, Lander’s complaint was not that the school should have spent money on software X instead of software Y because software X is better. Rather, the crux of Lander’s complaint was that Bunchman allowed public funds to be wasted in order to curry favor with her superior. In other words, Lander was not complaining of an internal budgetary decision but rather of malfeasance by a public official.
It is well established that “Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials, in terms of content, clearly concerns matters of public import.” Conaway v. Smith, 853 F.2d 789, 796 (10th Cir.1988). As noted above, Lander’s complaints about the mis-allocation of school funds regard an allegation of malfeasance by Bunchman by using school funds to advance her own career. Therefore, Lander’s speech on this subject is on a matter of public concern.
That Lander was complaining of malfeasance by Bunchman rather than a simple mis-allocation of school funds distinguishes the instant case from that in Gardetto v. Mason, 100 F.3d 803 (10th Cir.1996). There, we did hold that “details of internal budgetary allocations at an institution of public education are not matters of public concern.” Id. at 814. We applied that classification, however, only to complaints about how the plaintiff and her staff would be affected by a reduction in force plan, reasoning that the primary motivation for the complaint was the plaintiffs “personal interest in maintaining her staff.” Id. Importantly, there was never an allegation in that case that a public official was attempting to use public funds to curry favor, nor an allegation that a public official was wasting money, as the instant averments state here. See also Schalk v. Gallemore, 906 F.2d 491, 496 (10th Cir.1990) (holding that a hospital employee’s letter is on a matter of public interest when it “implicates the fiscal policies of the defendant and attempts to disclose waste and wrongdoing”).
Moreover, that the specific malfeasance by Bunchman may have been isolated does not remove Lander’s comment from the ambit of public concern. As we made clear in Conway, “[s]peech which discloses any evidence of ... malfeasance on the part of city officials ... clearly concerns matters of public import.” Id. (emphasis *220 added). Accordingly, we held, for example, in Burns v. Bd. of County Comm’rs, 330 F.3d 1275, 1286 (10th Cir.2003), that a plaintiffs statements relating to a single trade of “a Ford pickup for a Chevy pickup” was a matter of public concern because the plaintiff had reason to believe the trade was evidence of impropriety on the part of public officials. And, while the First Amendment claim did not prevail in Connick, nevertheless there in the Court’s conclusion it was emphasized that the holding was “grounded in our longstanding recognition that the First Amendment’s primary aim is the full protection of speech upon issues of public concern, as well as the practical realities involved in the administration of a government office.” 461 U.S. at 154, 103 S.Ct. 1684 (emphasis added).
2

Quality of public education

The second subject Lander claims was a matter of public concern was the requirement by Bunchman that all media specialists teach through the last day of class. In her complaint, Lander states:
13. In late spring 2000, Defendant Bunchman made an unprecedented requirement that all media specialists teach through the last day of school. On behalf of the media specialists, Plaintiff complained to the administration and SCEA that this requirement made it impossible for these teachers to complete their job duties without working unpaid overtime and that the requirement was detrimental to the maintenance of school equipment and the efficient functioning of the school libraries.
Appellant’s App. at 8 (emphasis added). As such, Lander is not complaining of the effect of the terms of her employment on her but rather the effect upon her students. Thus, Lander’s complaint pertains to the quality of public education rather than an internal management decision.
“Teachers whose speech directly affects the public’s perception of the quality of education in a given academic system find their speech protected [under the First Amendment].” Maples v. Martin, 858 F.2d 1546, 1553 (11th Cir.1988); Hulen v. Yates, 322 F.3d 1229, 1238 (10th Cir.2003) (citing Maples for the cited quote). Here, as noted above, Lander’s complaint is that the policy imposed by Bunchman adversely affects the quality of education provided by the Frisco Elementary School in preventing necessary maintenance on equipment. Therefore, Lander’s speech on this subject was on a matter of public concern. See Gardetto, 100 F.3d at 813 (noting that complaints about decisions that “affect the basic functions and missions” of a public educational institution do constitute “speech on matters of public concern”).
Moreover, that the general public may show apathy toward this issue is of no import in determining whether this issue is of public concern. As Judge Posner forcefully stated, the protections of the First Amendment are not limited to “matters of transcendent importance, such as the origins of the universe or the merits of constitutional monarchy” but encompass all “matters in which the public might be interested.” Dishnow v. Sch. Dist. of Rib lake, 77 F.3d 194, 197 (7th Cir.1996). “That the public was not large, that the issues were not of global significance, and ... not ... vital to the survival of Western civilization [does] not place [ ] speech outside the orbit of [First Amendment] protection.” Id.
This is not to say, however, that the relative importance of the speech is irrelevant. Rather, the importance of the speech is properly considered in the second step of the analysis utilized to assess a *221 First Amendment claim “wherein the employee’s interest in free comment upon matters of public concern is weighed against the state’s interest in the efficiency of its public services.” Pickering v. Board of Educ. of Township High School Dist. 205, Will County, Ill, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Such a balancing test, however, is inappropriate in evaluating a dismissal under Fed.R.Civ.P. 12(b)(6) as no countervailing state interest could have been alleged since the claim is evaluated solely upon the pleadings of the plaintiff. Therefore, the relative importance of Lander’s speech is irrelevant to this appeal.
B

Motion to Amend

As an alternative argument, Lander argues that we should allow her to amend her complaint were we to find the district court’s dismissal was not in error. As concluded above, we find the district court did err in dismissing Lander’s claim and, therefore, need not address her request to amend her complaint.
Ill

Conclusion

For the reasons detailed above, we hold that Lander’s speech did encompass two points of public concern: malfeasance of a public official and harm to the quality of public education. Accordingly, we REVERSE the district court’s dismissal of Lander’s claim pursuant to Fed.R.Civ.P. 12(b)(6).

 This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

. The court reaffirmed its holdings with a one-page written order incorporating its oral findings and dismissing Lander’s complaint pursuant to 12(b)(6) & 12(b)(1).